UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DIVERSIFIED CHEMICAL
TECHNOLOGIES, INC.,

        Plaintiff,

v.

RHEIN CHEMIE CORPORATION,

        Defendant.

_____/

Case No. 11-13668

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

**ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS [62]**

On January 26, 2016 Defendant filed a Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c) (Fed. R. Civ. Pro.) [62]. Plaintiff responded on February 23, 2016 [66] and Defendant replied on March 11, 2016 [67]. The Court finds the motion suitable for determination without a hearing, in accord with Local Rule 7.1(f)(2). For the reasons stated below, Defendant's Motion for Judgment on the Pleadings [62] is **DENIED.**

1

## FACTUAL BACKGROUND

Plaintiff Diversified Chemical Technologies, Inc. manufactures and markets specialty chemical products at its campus and headquarters located at 15477 Woodrow Wilson Street, Detroit, Michigan. Defendant Rhein Chemie Corporation designs, manufactures, distributes and sells chemical compounds, including Additin RC 3740 (Additin). Plaintiff bought a 55-gallon drum of Additin from Defendant prior to August 24, 2009 for use in its own chemical formulations. To properly utilize Additin in the manner Plaintiff wanted to achieve, the drum containing the Additin must be heated. Defendant knew that customers would be heating the drums containing Additin numerous times in a year. Plaintiff used the Additin in this manner until August 24, 2009 when the Additin ate through the bottom of the drum during the re-heating process, causing the product to release into the oven and start a fire that destroyed an entire building at Plaintiff's campus.

## LEGAL STANDARD

Per Fed. R. Civ. P. 12(c), "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." "Motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) are analyzed under the same *de novo* standard as motions to dismiss pursuant to Rule 12(b)(6). *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir.

2008). On a Rule 12(b)(6) motion to dismiss, the Court must "assume the veracity of [the plaintiff's] well-pleaded factual allegations and determine whether the plaintiff is entitled to legal relief as a matter of law." *McCormick v. Miami Univ.*, 693 F.3d 654, 658 (6th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)).

### ANALYSIS

Defendant is seeking to dismiss Plaintiff's claims based on the doctrine of economic loss and/or seeking to dismiss all claims pursuant to a disclaimer that was turned over by Plaintiff in discovery regarding the chemical Additin.

1. **ECONOMIC LOSS DOCTRINE**

Generally, the economic loss doctrine stands for the proposition that, when a "purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only 'economic' losses." *Neibarger v. Universal Cooperative, Inc.* case. 439 Mich. 512, 520 (1992). Therefore, when a Plaintiff is seeking to recover for economic loss caused by a defective product purchased for commercial purposes, the exclusive remedy is provided by the UCC, and claims cannot sound in tort. *Id* at 527-528.

Defendant argues that the economic loss doctrine must bar Plaintiff's claims because under Michigan law, the doctrine "bars *any* tort claim for economic damages arising from the sale of a product, if the seller and purchaser are both commercial entities." [66 at 4] (emphasis added). Since it is undisputed that both Plaintiff and Defendant are commercial entities, Defendant asserts that Plaintiff's tort claims are barred.

However, the fact that both Plaintiff and Defendant are business entities does not automatically bar Plaintiff's tort claims under Michigan law. Michigan adopted the economic loss doctrine in the *Neibarger v. Universal Cooperative, Inc.* case. 439 Mich. 512 (1992). As defined by the Court in *Neigarger*:

> tort claims for damage to other property are barred by the economic loss doctrine if those losses are direct and consequential losses that were within the contemplation of the parties and that, therefore, could have been the subject of negotiations between the parties.

*Detroit Edison Co. v. NABCO, Inc.*, 35 F.3d 236, 241 (6th Cir. 1994). While it is true that "[w]here the product is purchased for use in a commercial setting and both parties are business entities, *it is more likely* that the consequences of the product's potential failure are within the contemplation of the parties," it is not a forgone conclusion. *Michigan Mut. Ins. Co. v. Osram Sylvania, Inc.*, 111 F.3d 131 (6th Cir. 1997) (emphasis added). Even when both Plaintiff and Defendant are

4

business entities, it must be shown that the damage was within the contemplation of the parties to the agreement.

There are multiple cases that illustrate the necessity of demonstrating that the damage sustained was contemplated by the purchaser in order to invoke the economic loss doctrine. In *Neibarger* itself, the Court considered deposition evidence that the damage sustained by Plaintiff to his property was a common problem and that he "anticipated problems with the new system (i.e. the introduction of the product into his system) because some of the cows would not adapt to the new system and would have to be replaced. 439 Mich. 512 (1992).

The Court in *Detroit Edison Co. v. NABCO, Inc.* determined the incident caused by the pipes sold by Defendant that damaged Plaintiff's property was foreseeable and not beyond Detroit Edison's contemplation. 35 F.3d 236, 242 (6th Cir. 1994). In *Michigan Mut. Ins. Co. v. Osram Sylvania, Inc.* the Court found that the damage was not beyond contemplation by the Plaintiff at the time of purchase because Defendant issued a warning before the purchase which stated that the product could shatter and result in damage to equipment and property, making the damage sustained by Plaintiff foreseeable. 897 F. Supp. 992, 995 (W.D. Mich. 1995) aff'd, 111 F.3d 131 (6th Cir. 1997).

Whether Plaintiff contemplated the type of damage they sustained from the Additin is a factual question. Defendant has not presented any facts, and has not alleged that the economic damage sustained was contemplated by Plaintiff. Therefore, Plaintiff's tort claims are not barred by the economic loss doctrine.

2. **DISCLAIMER REGARDING ADDITIN**

Defendant also requests that the Court dismiss all of Plaintiff's claims because of a disclaimer that Plaintiff produced in discovery concerning Additin. Defendant states that when Plaintiff agreed to the purchase of Additin, it also:

> expressly agreed to use the product without warranty and expressly agreed to 'release Rhein Chemie and its affiliates from all liability in tort, contract, or otherwise, incurred in connection with the use of our products, technical assistance and information.

[62 at 13; Exhibit B].

To support its request, Defendant cites *Bailey Farms v. NOR-AM Chem. Co.* where the Plaintiff's breach of warranty claim was dismissed based on an express disclaimer of liability. 27 F. 3d 188, 193 (6th Cir. 1994). This case is factually inapposite because, in that case, it was held that the disclaimer was a valid disclaimer of warranties under M.C.L 440.2316 and was thus enforced. *Id*. Defendant has not attempted to make a showing that the disclaimer is valid under M.C.L. 440.2316.

Additionally, in their reply, Defendant cites *Genesee Foods Servs., Inc. v. Meadowbrook, Inc.* to support its argument for the enforcement of their disclaimer. 279 Mich. App. 649, 655-56 (2008). In *Genesee Foods*, the Defendant was seeking to be released from liability, and the release language in question was included in a signed agreement between Plaintiff and Defendant. The Court held that the release was valid under Michigan law because the Defendants had shown that the release was "fairly and knowingly made" when Plaintiffs signed the unambiguous release. *Id*. In the case before the Court, Defendant has not submitted any evidence that the disclaimer it is seeking to enforce was knowingly and fairly made; there is no signature on the document, and it is merely presented to the Court out of context to how Plaintiff encountered these "sheets."

Considering the legal authority cited, it is unclear on what basis the Defendant is seeking to enforce its disclaimer; but under either theory there is no evidence given that this disclaimer was included in the final sale agreement and expressly agreed to by Plaintiff. The documents submitted are a "Material Safety Data Sheet" and a "Technical Data Sheet." There is no evidence that Plaintiff expressly agreed to these as part of the sale or that they were even a part of the sale agreement. The documents are provided to the Court in isolation, only as information sheets that the Plaintiff had in its possession; there is no evidence

7

provided that they were a part of the agreement as finalized, or that Plaintiffs agreed to them. Because there is a factual issue regarding whether these disclaimers were indeed part of the finalized agreement and expressly agreed to, the Court declines to dismiss the entire case based on two documents presented in isolation without any legal theory or factual proof for why the disclaimer is valid.

**IT IS ORDERED** that Defendant's Motion for Judgment on the Pleadings [62] is **DENIED.**

**SO ORDERED**.

|  |  |
|---|---|
|  | s/Arthur J. Tarnow |
|  | Arthur J. Tarnow |
| Dated: March 21, 2016 | Senior United States District Judge |

8